EXECUTION VERSION

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| In re | Case No. 12-B-09458 |
|  | Chapter 11 |
| TRAINOR GLASS COMPANY, |  |
| d/b/a Trainor Modular Walls, |  |
| Trainor Solar, and Trainor Florida, | Hon. Carol A. Doyle |
|  |  |
| Debtor. |  |

## STIPULATION OF GLOBAL SETTLEMENT OF CONTROVERSIES BETWEEN TRAINOR GLASS COMPANY, FIRST MIDWEST BANK, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, BOND SAFEGUARD INSURANCE CO. AND LEXON INSURANCE CO., FIDELITY AND DEPOSIT COMPANY OF MARYLAND AND COLONIAL AMERICAN INSURANCE COMPANY, EDWIN J. TRAINOR AND THOMAS D. TRAINOR

Trainor Glass Company (the "*Debtor*" or "*Trainor*"), First Midwest Bank (the "*Bank*" or "*First Midwest*"), The Official Committee of Unsecured Creditors of Trainor Glass Company (the "*Committee*"), Edwin J. Trainor ("*Edwin*"), Thomas D. Trainor ("*Thomas*"), Bond Safeguard Insurance Company and Lexon Insurance Company (collectively, "*Bond Safeguard*") and Fidelity and Deposit Company of Maryland and Colonial American Insurance Company ("*F&D*", and together, with Trainor, First Midwest, the Committee, Edwin, Thomas and Bond Safeguard, the "*Parties*")[1] hereby enter into this *Stipulation of Global Settlement of Controversies Between Trainor Glass Company, First Midwest Bank, the Official Committee of Unsecured Creditors, Bond Safeguard Insurance Co. and Lexon Insurance Co., Fidelity and Deposit Company of Maryland and Colonial American Insurance Company, Edwin J. Trainor and Thomas D. Trainor* (the "*Stipulation*") as follows:

## RECITALS

*Whereas:*

1.     On March 9, 2012, Trainor filed a voluntary petition for chapter 11 bankruptcy protection on March 9, 2012 (the "*Petition Date*"), in the Bankruptcy Court for the Northern District of Illinois (the "*Bankruptcy Court*"), administered under case number 12-09458 before the Honorable Carol A. Doyle (the "*Bankruptcy Case*").

2.     First Midwest made certain loans and other financial accommodations to Trainor (the "*Prepetition Loans*"), including a revolving line of credit, term loans, letters of credit, and equipment finance loans pursuant to a Business Loan Agreement (Asset Based) dated as of

---

[1] Bond Safeguard and F&D are known together herein as the "*Sureties*."

August 27, 2004 by and between Trainor and First Midwest, as amended, modified and supplemented from time to time (the "*Prepetition Credit Agreement*").

3.      In connection with the Prepetition Credit Agreement, Trainor executed various promissory notes, security agreements and other ancillary documentation (collectively, with the Prepetition Credit Agreement, the "*Prepetition Loan Documents*").

4.      Under the terms of the Prepetition Loan Documents, Trainor granted a first priority lien and security interest in substantially all of its assets (the "*Prepetition Collateral*") to First Midwest to secure repayment of the Prepetition Loans.

5.      As of the Petition Date, Trainor's indebtedness under the Prepetition Loan Documents was not less than $34,059,905.29 (the "*First Midwest Claim Amount*").

6.      On March 27, 2012, the United States Trustee appointed the Committee to represent the interests of Trainor's unsecured creditors under § 1102 of the Bankruptcy Code.

7.      As of the Petition Date, the Debtor was a party to a number of ongoing construction contracts (the "*Contracts*" or "*Projects*").

8.      Each Project has an owner with which the Debtor contracted (the "*Owner*").

9.      In connection with the work contracted to be performed by Trainor, Trainor hired various subcontractors to perform services (the "*Subcontractors*"), laborers to provide labor on the Projects (the "*Laborers*") and materialmen to provide materials for the Projects (the "*Materialmen*").

10.     Many of the Contracts required the Debtor to provide a payment bond and a performance bond in connection with the Contracts as security for the Debtor's performance and payment of the Laborers, Materialmen and Subcontractors.

11.     Bond Safeguard is surety on certain surety bonds (the "*Bond Safeguard Bonds*") executed on behalf of the Debtor for the Contracts.

12.     F&D is a surety on certain surety bonds (the "*F&D Bonds*" and, together with the Bond Safeguard Bonds, the "*Bonds*") executed on behalf of the Debtor for certain Contracts.

13.     In order to induce Bond Safeguard to issue the Bonds, the Debtor, Doralco, Inc. ("*Doralco*"), Robert J. Trainor ("*Robert*"), Thomas, Irene R. Trainor ("*Irene*"), Edwin, and Angela A. Trainor ("*Angela*", together with Thomas, Irene, and Edwin the "*Individual Indemnitors*"; and the Individual Indemnitors, together with the Debtor, Doralco and Robert, the "*Indemnitors*"), executed a General Agreement of Indemnity (the "*Indemnity Agreement*") wherein the Indemnitors agreed to indemnify and hold Bond Safeguard harmless from every claim that Bond Safeguard may pay as a result of the Bonds.

14.     In order to induce F&D to issue the F&D Bonds, the Indemnitors executed an Agreement of Indemnity (the "*Indemnity Agreement*") wherein the Indemnitors agreed, among other things, to indemnify and hold F&D harmless from every claim that F&D may pay as a result of the Bonds.

15.     Bond Safeguard contends that the contract sums on the Contracts (the "*Bond Safeguard Contract Funds*") are trust funds for the payment of the costs of completing the work under the Contracts and payments to the Subcontractors, Laborers and Materialmen.   The Debtor, the Committee and First Midwest dispute that contention.

16.     F&D contends that the contract sums on the Contracts (the *"F&D Contract Funds"* and, together with the Bond Safeguard Contract Funds, the *"Contract Funds"*) are trust funds for the payment of the costs of completing the work under the Contracts and payments to the Subcontractors, Laborers and Materialmen.   The Debtor, the Committee and First Midwest dispute that contention.

17.     Certain Subcontractors, Laborers and Materialmen have received payment on claims made against the Bonds and Bond Safeguard and F&D have agreed to take the necessary steps to complete certain of the Projects as the result of claims made by the Owners.

18.     In some instances, the Bond Safeguard Contract Funds are sufficient to cover the amounts paid out by Bond Safeguard to complete the Project with a surplus of Contract Funds available, which shall be defined herein as Projects being "Bond Safeguard In the Money".   A listing of the Bond Safeguard In the Money Projects is attached hereto as Exhibit 1.

19.     In other instances, the Bond Safeguard Contract Funds are insufficient to cover the amounts paid out by Bond Safeguard to complete the Project, and for which no surplus remains; these shall be defined herein as Projects being "Bond Safeguard Out of the Money".

20.     In one or more instances, the F&D Contract Funds may be sufficient to cover the amounts paid out by F&D to complete the Contract with a surplus of Contract Funds available, which shall be defined herein as Projects being "F&D In the Money".   The Debtor, First Midwest and F&D have not yet determined the Projects that are F&D In the Money.

21.     In other instances, the F&D Contract Funds are insufficient to cover the amounts paid out by F&D to complete the Contract, and for which no surplus remains; these shall be defined herein as Projects being "F&D Out of the Money".

22.     First Midwest possesses claims against Doralco arising out of, among other things, loans First Midwest made to Shore Enterprises, Inc. that Doralco guaranteed.

23.     The Debtor's estate possesses potential claims against Doralco under chapter 5 of the Bankruptcy Code for avoidable transfers made prior to the Petition Date.

24.     On August 7, 2012, the Debtor and the Committee filed a joint motion to authorize the Committee to pursue non-insider avoidance actions, which motion was approved by Order entered March 7, 2013.

25.     On or about April 4, 2013 and continuing for several days thereafter, the Committee commenced approximately one hundred fifty (150) avoidance actions against numerous defendants (each, a *"Defendant"*) under chapter 5 of the Bankruptcy Code (the *"Avoidance Actions"*) in the Bankruptcy Court seeking the avoidance and recovery of transfers (the *"Transfers"*) pursuant to Section 547 of the Bankruptcy Code. Many of these Avoidance Actions were filed against Subcontractors, Laborers and Materialmen in connection with projects bonded in whole or in part by Bond Safeguard (the *"Bonded Avoidance Actions"*).

26.     Bond Safeguard has filed, and F&D has supported, motions for temporary restraining orders in the Bonded Avoidance Actions seeking to stay the actions based on the argument that the Bonded Avoidance Actions seek recoveries of amounts that were trust funds and thus are not subject to avoidance, among other things.  The Debtor, the Committee and First Midwest dispute that contention.

27.    The Debtor has commenced Adversary Proceeding No. 13-209 against Bond Safeguard (the "*Bond Safeguard AP*") and Adversary Proceeding No. 13-598 against F&D (the "*F&D AP*") (the Bond Safeguard AP and the F&D AP shall be collectively referred to as the "*Surety Adversary Proceedings*") seeking the return or recovery of alleged indirect preference payments.

28.    In the Bond Safeguard AP, Bond Safeguard filed a third-party complaint against First Midwest asserting a senior lien, interest or other right in the Debtor's accounts receivable as well as a claim against First Midwest to recover alleged Contract Funds paid pre-petition (the "*Third-Party Claims*").

29.    The Debtor filed an action against F&D and other parties in the United States District Court for the District of Maryland, Case No. 13-502, arising out of the Debtor's Clark Construction job (the "Maryland Case").

30.    The Debtor filed a mechanics' lien against the property in connection with the Debtor's Baylor job in Waco, Texas (the "Baylor Lien").

31.    The Debtor submitted an invoice dated April 17, 2012 in the amount of $564,547.50 to the general contractor on the Staten Island Courthouse Project ("SICH Invoice").

32.    A dispute has arisen between the Parties as to a variety of issues, including the respective Parties' interest in the Contract Funds and the validity of the claims asserted in the Surety Adversary Proceedings, the Third-Party Claims, and the Bonded Avoidance Actions.

33.    The Debtor and the Committee have filed the Second Amended Joint Plan of Liquidation of Trainor Glass Company (the "*Plan*"). Upon confirmation of the Plan, Phillip Van Winkle assumes the role of Liquidating Trustee of the Trainor Liquidating Trust, as defined in the Plan.

34.    Rather than engaging in costly, protracted litigation over the disputed matters which include potential objections by the Sureties to the Plan, the Parties have agreed to enter into a global compromise and settlement of the controversies raised between them that resolves the Plan objections and enhances the prospect for confirming the Plan, which preserves and protects Trainor's assets for the benefit of its creditors and allows for the full and final administration of this Bankruptcy Case.

<u>TERMS OF SETTLEMENT</u>

*Now, therefore*, for good and valuable consideration, the Parties hereby stipulate and agree as follows:

A.    **Sale of Doralco.** Edwin and Thomas shall cause Doralco to be marketed and sold as a going concern to the winning bidder prior to March 31, 2014, unless such date is extended pursuant to the procedures set forth in Section C below (the "*Doralco Sale*") and will take any actions necessary to effectuate such sale, subject to the direction provisions set forth in Section C below. The Doralco Sale may be structured as either an asset or stock sale so as to maximize the value of such sale at the election of the parties as set forth in Section C below. On or before January 31, 2014, Edwin and Thomas shall cause the Doralco shares of Brian Clark, Marie Trainor and Paul Kampf, together with any necessary documents to vote and/or transfer such

shares, to be transferred into escrow or otherwise held as directed by the Parties in accordance with Section C below..

B.      **Allocation of Net Proceeds of the Doralco Sale**. The Doralco Sale Net Proceeds shall be divided as follows:   (i) First Midwest – 50%; (ii) To the Debtor's estate as unencumbered funds – 33.33%; and (iii) Bond Safeguard and F&D – 16.67% (the "Sureties Share of Doralco Sale Net Proceeds"). Bond Safeguard shall reach an agreement with F&D concerning the distribution of the Sureties Share of Doralco Sale Net Proceeds; provided, however, that, for avoidance of doubt and pursuant to Section H below, F&D shall waive and release all claims against Doralco as of the closing of the Doralco Sale in exchange for its share of the Sureties Share of Doralco Sale Net Proceeds. The term "Doralco Sale Net Proceeds" shall mean all proceeds of the Doralco Sale available after payment of Doralco's senior lien claims, any other claims of third parties required by the purchaser to be paid at the closing of the Doralco Sale and any applicable broker commissions approved in accordance with Section C below that are payable from the sale. In the event that Bond Safeguard and F&D have not agreed as of the closing date as to the allocation of the Sureties Share of Doralco Sale Net Proceeds, the Sureties shall direct that the Sureties Share of Doralco Sale Net Proceeds shall be paid to an escrowee of their choice.

C.      **Decisions on Doralco Sale**. Any decisions that must be made by the applicable Parties with an interest in the Doralco Sale including, but not limited to, selection of a winning bidder and the timing of the Doralco Sale shall only be made with the consent of (a) First Midwest, (b) the Committee or Liquidating Trustee, as applicable, and (c) Bond Safeguard, with each party's voting interest based on its relative allocation of Doralco Sale Net Proceeds and at least a 50.1% interest in the Doralco Sale Net Proceeds being required to take action.

D.      **Bond Safeguard In The Money Projects**. With respect to the Bond Safeguard In the Money Projects, Bond Safeguard shall collect all funds on the Projects on which it has incurred a loss. Bond Safeguard shall retain 15% of the net proceeds remaining from the Project in excess of Bond Safeguard's costs; the remaining 85% of the net proceeds shall be distributed as follows: First Midwest – 65%, and the debtor's estate as unencumbered funds – 20%. Any compromise required to obtain Bond Safeguard Contract Funds may be made by the Liquidating Trustee (with the consent of First Midwest) in their sole discretion; provided, however, that if Bond Safeguard presents a proposed settlement on recovery of Bond Safeguard Contract Funds to the Liquidating Trustee and First Midwest and they do not consent to the settlement, (a) First Midwest or its designee will assume the obligation to defend and/or litigate over those Bond Safeguard Contract Funds, (b) First Midwest will indemnify Bond Safeguard for any losses it incurs due to First Midwest's failure to consent to the proposed settlement and (c) First Midwest Bank shall provide a Bond or other such security or evidence of financial wherewithal as agreed by the parties. For avoidance of doubt, the Debtor's Orange Line Expansion Project for Odebrecht-Tower-Community Joint Venture shall not be considered a "Bond Safeguard In the Money Project" and First Midwest shall receive 100% of the net proceeds of such Project, the details of which were approved by an order of the Bankruptcy Court entered on December 11, 2013 (Dkt. No. 1618). Bond Safeguard agrees to waive and release any right of set off, recoupment or otherwise against the proceeds payable to First Midwest pursuant to this Section D.

E.      **Bond Safeguard Out Of The Money Projects**. With respect to the Bond Safeguard Out of the Money Projects, Bond Safeguard shall retain all Contract Funds.

F.    **F&D In The Money Projects**.  With respect to any F&D In The Money Projects, any contract funds remaining from any individual Contract in excess of F&D's costs to complete the said Contract and to pay Subcontractors, Laborers and Materialmen shall be paid to F&D in accordance with any takeover or similar agreement entered into by F&D and F&D shall, within 21 days following receipt thereof, pay the same to First Midwest or its designee.  F&D agrees to waive and release any right of set off, recoupment or otherwise against the remaining contract funds on F&D In The Money Projects payable to First Midwest pursuant to this Section F.

G.    **F&D Out Of The Money Projects**.  With respect to the F&D Out of the Money Projects, F&D shall retain all Contract Funds.

H.    **Releases: Individual Indemnitors and Doralco**.  Effective upon (1) the closing of the Doralco Sale and turnover of the Doralco Net Sale Proceeds either (a) in accordance with Section B above, or (b) to an escrow agent for the benefit of First Midwest, Bond Safeguard and the Liquidating Trustee in the event of a dispute over their distribution, and (2) the satisfaction of all obligations in accordance with Section A above and subject to Edwin's and Thomas's continuing duties under Section I of this Stipulation, Bond Safeguard, F&D and First Midwest shall be deemed to release the Individual Indemnitors[2] and Doralco from any claims, causes of action, liabilities or debts, including any guarantees, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued based upon acts, omissions, conduct or other matters occurring prior to the date hereof arising out of or related to the Debtor or Doralco; provided, however, that any release under this Section H shall not extend to any obligations under any of Doralco's real property leases under which First Midwest may have a direct or indirect interest.  Upon the provisions of this Stipulation becoming effective pursuant to subsection (1) and (2) of this Section, the Individual Indemnitors and Doralco shall be deemed to release Bond Safeguard, F&D, the Debtor's estate and First Midwest, and any respective successors or assigns from any claims, causes of action, liabilities or debts, including any guarantees, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued based upon acts, omissions, conduct or other matters occurring prior to the date hereof arising out of or related to the Debtor or Doralco.  In addition, Edwin and Thomas covenant not to assert any claim or right against any proceeds of the Doralco Sale.  Within fourteen days after the entry of the Confirmation Order, Bond Safeguard and F&D shall cause all pending suits against Doralco and the Individual Indemnitors to be dismissed without prejudice.  Doralco and the Individual Indemnitors agree that to the extent necessary, they will each execute reasonable tolling agreements as requested by Bond Safeguard and/or F&D to toll any of the claims pending against them as of the date of this Stipulation through the occurrence of the effectiveness of the releases set forth herein.

I.    **Continuing Duties of Edwin and Thomas**.  Until the dissolution of the Trainor Liquidating Trust, Thomas and Edwin shall continue to cooperate with the Parties, without compensation (but with no obligation by either Thomas or Edwin to incur any out of pocket expenses), to liquidate and recover the remaining assets of the Debtor's estate administered by the Trainor Liquidating Trust and resolve claims made by any Owner, Subcontractor, Laborer and/or, Materialmen against a Bond in connection with a Contract.

---

[2] Note: Robert Trainor is not included as an Individual Indemnitor and therefore is not subject to the release granted herein.  All claims against Robert Trainor are expressly preserved.

J.      **Litigation against Robert.** Bond Safeguard and F&D agree to forebear from pursuing their litigation claims against Robert so long as First Midwest reasonably diligently pursues its litigation claims against Robert. First Midwest agrees to pay 50% jointly to Bond Safeguard and F&D the net proceeds (i.e., after reimbursing First Midwest for its costs of collection), if any, of any judgment it obtains against Robert; Bond Safeguard and F&D shall reach an agreement concerning the allocation of the proceeds to the paid to Bond Safeguard and F&D in accordance with Section J.

K.      **Pre-Petition Collections.** The Debtor shall transfer to First Midwest the $115,674.10 in pre-petition receivables currently held in Debtor's counsel's client trust account and Bond Safeguard and F&D shall waive and release any claims to those funds.

L.      **Deemed Unencumbered Funds.** First Midwest agrees that $115,000 of what it claims as cash collateral shall be treated as unencumbered funds of the Debtor's estate.

M.      **Pending Litigation and Releases.** Except as set forth under this Agreement including, without limitation, with respect to the "Bond Safeguard In the Money Projects" and the "F&D In the Money Projects", upon the entry of a final and non-appealable order approving this Stipulation, the Debtor's estate and First Midwest shall waive and release all claims, causes of action, liabilities or debts against Bond Safeguard and F&D, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued based upon acts, omissions, conduct or other matters occurring prior to the date hereof arising out of or related to the Debtor. Except for Bond Safeguard's asserted Class 2 Priority Claim against the Debtor's estate, and Bond Safeguard's and F&D's asserted Class 3 General Unsecured Claims against the Debtor's estate for actual losses incurred payable through the Debtor's and Official Committee of Unsecured Creditors' Second Amended Plan of Liquidation, and as otherwise set forth under this Agreement, upon the entry of a final and non-appealable order approving this Stipulation, Bond Safeguard and F&D shall waive and release all claims, causes of action, liabilities or debts against the Debtor's estate and First Midwest, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued based upon acts, omissions, conduct or other matters occurring prior to the date hereof arising out of or related to the Debtor. Upon the entry of a final and non-appealable order approving this Stipulation, the Surety Adversary Proceedings and the Third-Party Claims shall be dismissed with prejudice.

N.      **Maryland Case.** Within 30 days of the entry of the Confirmation Order, the Debtor shall dismiss the Maryland Case, without prejudice; provided, however, that such dismissal shall not waive or preclude the Debtor from collecting on the Clark Construction job if it qualifies as an F&D In The Money Project.

O.      **Baylor Lien.** Within 30 days of the entry of the Confirmation Order, the Debtor shall release the Baylor Lien; provided that such release of lien shall not waive or preclude the Debtor from collecting on the Baylor job if it qualifies as an F&D In The Money Project.

P.      **SICH Invoice.** F&D has requested that the Debtor withdraw or waive the SICH Invoice. The Debtor and the Bank have declined to do so as of the date hereof because they have insufficient information to respond to F&D's request. Notwithstanding any provision herein to the contrary, F&D, the Debtor and the Bank reserve their rights with respect to the SICH Invoice and they shall cooperate in good faith to resolve any issues with respect thereto.

Q.    **Assignment of Claims.**  The Debtor reaffirms the assignments of rights and claims to F&D and Bond Safeguard as the case may be contained in the Indemnity Agreements referred to in paragraphs 13 and 14 of the Recitals hereto for use by the Sureties in defending against any claims made by any obligee on any of the Bonds or Contracts.  In the event that the any of the Sureties realize a net recovery as a result of the assertion of any assigned right or claim, the amount of such recovery shall be considered part of the Contract Funds in determining whether or not any Contract is "In the Money" or "Out of the Money" as contemplated by this Stipulation.

R.    **Avoidance Actions.**  Bond Safeguard and F&D shall immediately withdraw the temporary restraining orders filed in the Bonded Avoidance Actions, and shall not object to proposed settlements of Bonded Avoidance Actions by the Committee or the Liquidating Trustee that contain releases in their favor in the forms previously approved in these Cases.

S.    **Voting on Plan.**  Bond Safeguard and F&D shall vote in favor of the Second Amended Joint Plan of Liquidation dated November 13, 2013.

T.    **Effectiveness Contingent on Court Approval & Severability of Provisions**

This Stipulation shall not be effective unless approved by the Court.  Should the Court condition its approval of the Stipulation, or find any provision of the Stipulation invalid, the Parties agree that the Stipulation may still be effective despite such condition or finding of invalidity, so long as each of the Parties agree to the condition or other provision in writing. Should the Court deny approval of this Stipulation, or condition its approval on terms not acceptable to any of the Parties, the Parties' agreements in this Stipulation will terminate and be void.  All of the statements, admissions, consents, and agreements contained in this Stipulation and any motion filed to approve the Stipulation shall be void; and neither the Committee, nor Trainor, nor First Midwest, nor Bond Safeguard may use or rely on any such statement, admission, consent, or agreement in any public statement or litigation involving the Parties.

U.    **Entire Agreement, Execution in Counterparts, and Electronic Signatures Allowed**

This Stipulation constitutes the entire agreement between the Parties and may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same.  This Stipulation may be signed and transmitted electronically or by facsimile, and any such signature or transmission shall have the full force and effect of original ink signatures

V.    **Authority to Execute the Stipulation**

The undersigned individuals represent and warrant that they have full authority to execute this Stipulation on behalf of their respective Parties, and have obtained all necessary approvals from those Parties.  This Stipulation is the resolution of disputed claims and nothing in this Stipulation shall be deemed an admission against any of the Parties.

W.    **Other Provisions**

This Stipulation shall be binding on and inure to the benefit of the Parties respective assigns and successors.

This Stipulation, and all matters arising under or in connection with this Stipulation, shall be governed by the laws of the state of Illinois to the extent they apply.

Dated:  December 20, 2013

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE TRAINOR GLASS
COMPANY

By: _____
Aaron L. Hammer, Esq.
Mark S. Melickian, Esq.
SUGAR FELSENTHAL GRAIS & HAMMER LLP
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60606-6677
Telephone: 312.704.9400
Facsimile: 312.372.7951


BOND SAFEGUARD INSURANCE COMPANY
AND LEXON INSURANCE COMPANY

By: _____
Lee E. Woodard, Esq.
HARRIS BEACH PLLC
333 West Washington St., Ste. 200
Syracuse, New York 13202
Telephone: 315.423.7100
Facsimile: 315.422.


TRAINOR GLASS COMPANY

By: _____
Michael L. Gesas, Esq.
David A. Golin, Esq.
ARNSTEIN & LEHR, LLP
120 S. Riverside Plaza, Ste. 1200
Chicago, IL 60606
Telephone: 312.876.7100
Facsimile: 312.876.0288


FIRST MIDWEST BANK

By: _____
Mark L. Prager, Esq.
Geoffrey S. Goodman, Esq.
Lars A. Peterson, Esq.
FOLEY & LARDNER LLP
321 N. Clark Street, Ste. 2800
Chicago, IL 60654-5313
Telephone: 312.832.4500
Facsimile: 312.832.4700


4838-8678-8631.13

Dated:  December 20, 2013

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE TRAINOR GLASS
COMPANY


By: _____
Aaron L. Hammer, Esq.
Mark S. Melickian, Esq.
SUGAR FELSENTHAL GRAIS & HAMMER LLP
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60606-6677
Telephone: 312.704.9400
Facsimile: 312.372.7951

BOND SAFEGUARD INSURANCE COMPANY
AND LEXON INSURANCE COMPANY

By: _____
Lee E. Woodard, Esq.
HARRIS BEACH PLLC
333 West Washington St., Ste. 200
Syracuse, New York 13202
Telephone: 315.423.7100
Facsimile: 315.422.


TRAINOR GLASS COMPANY


By: _____
Michael L. Gesas, Esq.
David A. Golin, Esq.
ARNSTEIN & LEHR, LLP
120 S. Riverside Plaza, Ste. 1200
Chicago, IL 60606
Telephone: 312.876.7100
Facsimile: 312.876.0288

FIRST MIDWEST BANK


By: _____
Mark L. Prager, Esq.
Geoffrey S. Goodman, Esq.
Lars A. Peterson, Esq.
FOLEY & LARDNER LLP
321 N. Clark Street, Ste. 2800
Chicago, IL 60654-5313
Telephone: 312.832.4500
Facsimile: 312.832.4700

Dated:  December 20, 2013

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE TRAINOR GLASS
COMPANY

By: _____
Aaron L. Hammer, Esq.
Mark S. Melickian, Esq.
SUGAR FELSENTHAL GRAIS & HAMMER LLP
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60606-6677
Telephone: 312.704.9400
Facsimile: 312.372.7951

TRAINOR GLASS COMPANY

By: _____
Michael L. Gesas, Esq.
David A. Golin, Esq.
ARNSTEIN & LEHR, LLP
120 S. Riverside Plaza, Ste. 1200
Chicago, IL 60606
Telephone: 312.876.7100
Facsimile: 312.876.0288

BOND SAFEGUARD INSURANCE COMPANY
AND LEXON INSURANCE COMPANY

By: _____
Lee E. Woodard, Esq.
HARRIS BEACH PLLC
333 West Washington St., Ste. 200
Syracuse, New York 13202
Telephone: 315.423.7100
Facsimile: 315.422.

FIRST MIDWEST BANK

By: _____
Mark L. Prager, Esq.
Geoffrey S. Goodman, Esq.
Lars A. Peterson, Esq.
FOLEY & LARDNER LLP
321 N. Clark Street, Ste. 2800
Chicago, IL 60654-5313
Telephone: 312.832.4500
Facsimile: 312.832.4700

4838-8678-8631.13

Dated: December 20, 2013

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE TRAINOR GLASS
COMPANY

By: _____
Aaron L. Hammer, Esq.
Mark S. Melickian, Esq.
SUGAR FELSENTHAL GRAIS & HAMMER LLP
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60606-6677
Telephone: 312.704.9400
Facsimile: 312.372.7951

BOND SAFEGUARD INSURANCE COMPANY
AND LEXON INSURANCE COMPANY

By: _____
Lee E. Woodard, Esq.
HARRIS BEACH PLLC
333 West Washington St., Ste. 200
Syracuse, New York 13202
Telephone: 315.423.7100
Facsimile: 315.422.

TRAINOR GLASS COMPANY

By: _____
Michael L. Gesas, Esq.
David A. Golin, Esq.
ARNSTEIN & LEHR, LLP
120 S. Riverside Plaza, Ste. 1200
Chicago, IL 60606
Telephone: 312.876.7100
Facsimile: 312.876.0288

FIRST MIDWEST BANK

By: _____
Mark L. Prager, Esq.
Geoffrey S. Goodman, Esq.
Lars A. Peterson, Esq.
FOLEY & LARDNER LLP
321 N. Clark Street, Ste. 2800
Chicago, IL 60654-5313
Telephone: 312.832.4500
Facsimile: 312.832.4700

4838-8678-8631.13

FIDELITY AND DEPOSIT COMPANY OF
MARYLAND AND COLONIAL AMERICAN
INSURANCE COMPANY

By: _____
Cornelius F. Riordan, Esq.
RIORDAN, McKEE & PIPER, LLC
20 N. Wacker Drive, Ste. 910
Chicago, IL 60606
Telephone: (312) 589-6010
Facsimile: (312) 663-1028

EDWIN J. TRAINOR

BY: _____
Brian Shaw, Esq.
SHAW FISHMAN
GLANTZ & TOWBIN LLC
321 N. Clark Street, Suite 800
Chicago, IL 60654
Telephone: (312) 666-2833
Facsimile: (312) 9803888

THOMAS D. TRAINOR

By: _____
David K. Welch, Esq.
CRANE, HEYMAN, SIMON, WELCH &
CLAR
135 S. LaSalle, Suite 3705
Chicago, IL 60603
Telephone: (312) 641-6777
Facsimile: (312) 641-7114

4838-8678-8631.13

FIDELITY AND DEPOSIT COMPANY OF
MARYLAND AND COLONIAL AMERICAN
INSURANCE COMPANY

By: _____
Cornelius F. Riordan, Esq.
RIORDAN, McKEE & PIPER, LLC
20 N. Wacker Drive, Ste. 910
Chicago, IL 60606
Telephone: (312) 589-6010
Facsimile: (312) 663-1028


THOMAS D. TRAINOR


By: _____
David K. Welch, Esq.
CRANE, HEYMAN, SIMON, WELCH &
CLAR
135 S. LaSalle, Suite 3705
Chicago, IL 60603
Telephone: (312) 641-6777
Facsimile: (312) 641-7114

EDWIN J. TRAINOR


By: _____
Brian Shaw, Esq.
SHAW FISHMAN
GLANTZ & TOWBIN LLC
321 N. Clark Street, Suite 800
Chicago, IL 60654
Telephone: (312) 666-2833
Facsimile: (312) 9803888

4838-8678-8631.13

FIDELITY AND DEPOSIT COMPANY OF
MARYLAND AND COLONIAL AMERICAN
INSURANCE COMPANY

EDWIN J. TRAINOR

By: _____
Cornelius F. Riordan, Esq.
RIORDAN, McKEE & PIPER, LLC
20 N. Wacker Drive, Ste. 910
Chicago, IL 60606
Telephone: (312) 589-6010
Facsimile: (312) 663-1028

BY:_____
Brian Shaw, Esq.
SHAW FISHMAN
GLANTZ & TOWBIN LLC
321 N. Clark Street, Suite 800
Chicago, IL 60654
Telephone:  (312) 666-2833
Facsimile:  (312) 9803888

THOMAS D. TRAINOR

By: _____
David K. Welch, Esq.
CRANE, HEYMAN, SIMON, WELCH &
CLAR
135 S. LaSalle, Suite 3705
Chicago, IL 60603
Telephone:  (312) 641-6777
Facsimile:  (312) 641-7114

# EXHIBIT 1

## BOND SAFEGUARD IN THE MONEY PROJECTS

1.  Amistad Dam (Trainor Project No. 111537)

2.  Anacostia Health Center/Unity Healthcare (Trainor Project No. 107675)

3.  Ann & Robert Lurie Children's Hospital Atrium & Lobby (Trainor Project No. 107135)

4.  Ann & Robert Lurie Children's Hospital Glass/Glazing (Trainor Project Nos. 98344 & 99941)

5.  BAE Systems (Trainor Project No. 107740)

6.  Campbell County Memorial Hospital Parking Garage (Trainor Project No. 101795)

7.  Campbell County Memorial Hospital (Trainor Project No. 105443)

8.  Hyatt Regency Atlanta (Trainor Project No. 106020)

9.  PGCC Center for Health Studies (Trainor Project No. 103485)

10. PSHIA Stage 1-44th St. Station (Trainor Project No. 105846)

11. Ralph Carr (Trainor Project No. 104782)

12. UNF Science & Humanities (Trainor Project No. 108801)

4814-0854-9399.1